**In re the GRAND JURY PROCEEDINGS OF JUNE 16, 1981, in the United States District Court for the Eastern District of Wisconsin.**

No. 81 Misc. 30.

United States District Court,
E. D. Wisconsin.

Aug. 5, 1981.

---

Joseph P. Stadtmueller, U. S. Atty. by Michael T. Trost, Asst. U. S. Atty., Milwaukee, Wis., for the U. S.

Donald S. Eisenberg, Eisenberg, Giesen, Ewers & Hayes, Madison, Wis., for Thomas P. Quinn.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

On May 12, 1981, a subpoena was issued requiring Thomas P. Quinn to report to a grand jury as a witness and requiring him to bring certain records pertaining to his relationship with Peter P. Whorley. According to the government's brief, the grand jury is currently investigating allegations that Mr. Whorley and others were involved in the illicit sale and distribution of controlled substances and that they unlawfully evaded the payment of income taxes on income derived from these activities. Mr. Quinn is an attorney who has had a professional relationship with Mr. Whorley. Mr. Quinn moves to quash the subpoena.

The subpoena commands Mr. Quinn to appear before the grand jury on July 17, 1981. The government has agreed to a delay in Mr. Quinn's attendance pending the resolution of the motion to quash. The subpoena requires Mr. Quinn to bring with him to the grand jury the following items:

"1. records relating to fees received from or on behalf of Peter P. Whorley for professional services rendered.

"2. records relating to real estate purchases of Peter P. Whorley or by any person or corporation for or on behalf of Peter P. Whorley."

Mr. Quinn raises three categories of arguments in support of his motion to quash. 1) He contends that compelling him to testify and to produce records would violate the attorney-client relationship he has with Mr. Whorley. 2) He claims that the enforcement of the subpoena without a preliminary showing of relevance by affidavit from the government is an abuse of the grand jury process and that the subpoena is overly broad. 3) Mr. Quinn further asserts that the subpoena violates both his and his client's fifth amendment rights.

Although the documents demanded by the subpoena are recited in full above, the movant has curiously construed this subpoena duces tecum as follows: "In the instant case, the government wants all records pertaining to Thomas R. Quinn's professional relationship with Peter Whorley, including the client trust fund account." Quinn brief in support of motion to quash, filed June 22, 1981, pp. 3–4. Specifically, Mr. Quinn asserts that the subpoena seeks his worksheets and other information that contains confidential communications from his client. It is not disputed that such materials, if sought, would fall squarely within the attorney-client privilege and

need not be produced. *See United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358–59 (D.Mass.1950) (Wyzanski, J.); *Colton v. United States*, 306 F.2d 633, 636–37 (2d Cir. 1962), *cert. denied* 317 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963) (quoting *United Shoe*). However, the government denies that the subpoena in question seeks material that is within the attorney-client privilege.

■ Item one seeks records regarding the fees paid to Mr. Whorley to Mr. Quinn. It is well settled that information relating to the fee arrangement between the client and his attorney is not privileged.

"As a general rule, matters involving the receipt of fees from a client are not privileged as they do not involve confidential communications. *In re January 1976 Grand Jury (Genson)* [534 F.2d 719 (7th Cir. 1976)]; *United States v. Hodgson* [492 F.2d 1175 (10th Cir. 1974)]; *United States v. Haddad*, 527 F.2d 537 (6th Cir. 1975), *cert. denied*, 425 U.S. 974 [96 S.Ct. 2173, 48 L.Ed.2d 797] . . . (1976). This is also true with respect to who paid the fee. *In re Michaelson*, 511 F.2d 882 (9th Cir.), *cert. denied*, 421 U.S. 978 [95 S.Ct. 1979, 44 L.Ed.2d 469] . . . (1975). The grand jury may thus view the documents sought by the subpoena, including ledgers, time records, and retainer agreements." *Matter of Walsh*, 623 F.2d 489, 494 (7th Cir. 1980); *accord, United States v. Davis*, 636 F.2d 1028, 1044 (5th Cir. 1981); *In re January 1976 Grand Jury*, 534 F.2d 719, 728 (7th Cir. 1976); *In re Grand Jury Proceedings*, 517 F.2d 666 (5th Cir. 1975); *see Colton, supra.*

None of the limited exceptions to this rule discussed in the above-cited cases applies to the case at bar. Thus the first item of the subpoena is not affected by Mr. Quinn's assertion of the attorney-client privilege.

The second item of the subpoena seeks records pertaining to real estate purchases made on behalf of Mr. Whorley. Mr. Quinn again asserts that this item seeks confidential communications made to him by his client. He also asserts that it may require production of records relating to a trust fund account established on behalf of Mr. Whorley "in furtherance of their professional relationship."

The court of appeals for the fifth circuit extensively discussed this issue in *United States v. Davis*, 636 F.2d 1028 (5th Cir. 1981). *Davis* involved a lengthy subpoena of an attorney, part of which required the production of records of real estate transactions involving a client under investigation. *Id.*, at 1033 n.3. The court rejected the contention that these records were protected by the attorney-client privilege.

"An attorney who acts as his client's business advisor, or his agent for the receipt or disbursement of money or property to or from third parties (Items 5–8), is not acting in a legal capacity, and records of such transactions are not privileged." *Davis, supra*, at 1044, citing *Colton, supra* (other citations omitted).

Similarly, *Davis* held that records relating to a trust fund established for the client are not privileged. "Documents establishing trust funds . . . are not privileged because in their creation the attorney acts merely as a scrivener." *Davis, supra*, at 1044, n.19.

■ I reject Mr. Quinn's assertion that the subpoena seeks confidential communications made by the client. The plain meaning of the words used in the subpoena encompasses only items that are not protected by the attorney-client privilege. The subpoena only calls for the production of unprotected records, and I will not read into it that which is not there.

■ While he does not explicitly make this argument, Mr. Quinn may also be asserting that the records sought are protected by the work-product rule. If such an argument is made, it too must fail, for the work-product rule only applies to documents prepared "in anticipation of litigation." *United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1974), quoting *Hickman v. Taylor*, 329 U.S. 495, 508, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947). Nothing in the record suggests that the records sought were prepared in antici-

pation of litigation. In addition, "the remote prospect of future litigation is not sufficient to invoke the work product doctrine." *In re Special September 1978 Grand Jury*, 640 F.2d 49, 65 (7th Cir. 1980), citing *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596 (8th Cir. 1977). If some future litigation was indeed contemplated when these records were prepared, it could not have been anything but a remote possibility. Thus the work-product rule does not apply to these records.

Mr. Quinn's second group of arguments includes arguments that the subpoena is an abuse of the grand jury process and overly broad. He first argues that the government cannot attempt to enforce a subpoena without first showing by affidavit the relevance of the items sought to the ground jury process; he cites as support for this proposition *In re Grand Jury Proceedings*, 486 F.2d 85 (3rd Cir. 1973); and *In re Grand Jury Proceedings*, 507 F.2d 963 (3rd Cir. 1975) (referred to as *Schofield I* and *Schofield II*, respectively).

The government responds that the *Schofield* rule is limited to what was sought in that case—handwriting exemplars, fingerprints, and a mug shot. The language in *Schofield II* seems to support such a contention, but, in any event, I am not persuaded that the *Schofield* cases are controlling.

The court of appeals for this circuit has set forth standards for determining whether a grand jury subpoena satisfies the requirements of the fourth amendment. *United States v. Alewelt*, 532 F.2d 1165, 1168 (7th Cir. 1976); citing *United States v. Gurule*, 437 F.2d 239 (10th Cir. 1970), *cert. denied*, 403 U.S. 904, 91 S.Ct. 2202, 29 L.Ed.2d 679 (1971). The *Alewelt* standards are an effort to give some structure to the broad requirement that a subpoena must be "reasonable" to pass fourth amendment muster. *Hale v. Henkel*, 201 U.S. 43, 76, 26 S.Ct. 370, 379, 50 L.Ed. 652 (1906); *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 208, 217, 66 S.Ct. 494, 505, 509, 90 L.Ed. 614 (1945). Nothing in *Alewelt* requires the government to support its subpoena with an affidavit. Thus I am not prepared to quash this subpoena solely on the ground that the government has not supported it by affidavit.

A grand jury subpoena is not a "seizure" under the fourth amendment. *United States v. Dionisia*, 410 U.S. 1, 9, 93 S.Ct. 764, 769, 35 L.Ed.2d 67 (1973). The Supreme Court has stated:

" '[The grand jury] is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime.' Hence the grand jury's authority to subpoena witnesses is not only historic, but essential to its task. Although the powers of the grand jury are not unlimited and are subject to the supervision of a judge, the long-standing principle that 'the public ... has a right to every man's evidence,' except for those persons protected by a constitutional, common-law, or statutory privilege, is particularly applicable to grand jury proceedings." *Branzburg v. Hayes*, 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972) (citations omitted).

As stated above, the principles of the fourth amendment do require that a subpoena be reasonable. *Alewelt* states:

"The authority of a grand jury to inquire into violations of criminal law through the use of subpoenas duces tecum is necessarily broad, and is generally limited only by the requirement that the evidence to be produced cover a reasonable period of time, is relevant to the investigation, and is identified with reasonable particularity." *Alewelt, supra*, at 1168 (citations omitted).

The records sought would appear to be relevant to the investigation being pursued. Records of financial transactions could well be essential to the proper investigation of allegations of the type present in the case at bar. I have already determined that no privilege protects these records, and I am satisfied that no objection as to relevance can be successfully raised.

■ The subpoena also identifies the materials sought with reasonable particularity. I find no merit to Mr. Quinn's suggestion that this subpoena is overly broad. The subpoena is limited to two specific categories of records relating to one individual. This subpoena is not even remotely similar to the unlimited searches of documents that have been condemned as unreasonable. *See Federal Trade Commission v. American Tobacco Co.*, 264 U.S. 298, 304–05, 44 S.Ct. 336–37, 68 L.Ed. 696 (1924). Far broader subpoenas than this one have been enforced. *See In re September 1978 Grand Jury, supra,* 640 F.2d at 53–55 nn.7–8; *Davis, supra,* 636 F.2d at 1033 n.3.

The subpoena at bar does not specify a time period for its coverage. The government argues that this does not necessitate a finding that the subpoena is unreasonable. The government contends:

"The subpoena requests any and all records related to transactions between Mr. Whorley and Attorney Quinn. Upon information and belief full compliance with the subpoena would cover a relatively short period of time commencing on or about early 1980 and ending sometime in 1981. If this belief is correct, compliance with the subpoena cannot be considered oppressive or unreasonable." Government's brief in opposition, p. 5.

■ While the government's representation is helpful, the subpoena itself is not limited to that time frame. Accordingly, I will exercise the inherent powers this court possesses to supervise the grand jury and quash this subpoena insofar as it requires production of records that date from any year prior to 1980.

■ Mr. Quinn argues that the nature of the records to be produced under item two of the subpoena is such that the names of other clients of his will "doubtlessly" be revealed. He argues that this is an invasion of their privacy when they have nothing to do with this matter. Accordingly, I will direct Mr. Quinn to submit the records required under item two of the subpoena to the court for an *in camera* inspection to determine if the privacy of his other clients will be improperly affected.

■ Mr. Quinn raises as a final argument against this subpoena that it violates both his and his client's fifth amendment right against self-incrimination. In certain circumstances, an attorney may assert his client's fifth amendment right and refuse to comply with a subpoena for documents. *Fisher v. United States*, 425 U.S. 391, 404, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). The court in *Davis* discussed the application of *Fisher* to the subpoena in that case. As noted above, elements of the *Davis* subpoena are virtually identical to the subpoena at bar. The court concluded that *Fisher* did not apply. *Davis, supra,* 636 F.2d at 1040–44; *see In re September 1978 Grand Jury, supra,* 640 F.2d at 64. The cogent analysis of *Davis* is completely applicable here; Mr. Quinn cannot refuse to comply with this subpoena based on his client's fifth amendment right.

■ Mr. Quinn also asserts his own fifth amendment right. However, his assertion is conclusory and is not sufficient to excuse his appearance before the grand jury. If every person summoned before a grand jury could evade the subpoena simply by asserting his fifth amendment right, the grand jury would never be able to function. Determination of whether the grand jury investigation will infringe on Mr. Quinn's fifth amendment right can be determined at the appropriate time, with proper reference to the questions put and the nature of the investigation. *See Hoffman v. United States*, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). Mr. Quinn's assertion of his fifth amendment rights at this stage of the proceedings is not sufficient to quash this subpoena.

Therefore, IT IS ORDERED that the motion of Mr. Quinn to quash the subpoena be and hereby is granted in part and denied in part.

IT IS ALSO ORDERED that Mr. Quinn's motion be and hereby is granted insofar as the subpoena seeks records from years prior to 1980.

IT IS FURTHER ORDERED that the items to be produced under item two of the subpoena be submitted to the court for *in camera* inspection.

IT IS FURTHER ORDERED that Mr. Quinn's motion be and hereby is denied in all other respects.