**UNITED STATES of America and Frank M. Odom, Special Agent, Internal Revenue Service, Petitioners,**

**v.**

**Mitchell ARONSON, Respondent.**

**No. 84–3003–Civ–Aronovitz.**

United States District Court, S.D. Florida, Miami Division.

June 6, 1985.

Elizabeth Stein, Asst. U.S. Atty., Miami, Fla., Alvarez L. LeCesne, Jr., Tax Div., Dept. of Justice, Washington, D.C., for petitioners.

Joel Hirschhorn, P.A., Miami, Fla., for respondent.

## ORDER GRANTING PETITION TO ENFORCE INTERNAL REVENUE SERVICE SUMMONS WITH MEMORANDUM OPINION

ARONOVITZ, District Judge.

THIS CAUSE came before the Court upon a Petition to Enforce Internal Revenue Service ("IRS") Summons (filed December 26, 1984) and Respondent's claim of attorney-client privilege thereon. Said Petition sought enforcement of an IRS summons issued upon Respondent Attorney MITCHELL ARONSON for failure to produce certain documents and give testimony

regarding an IRS investigation into the tax liabilities of two individuals by the names of David Sawyer and Delores Sawyer. The subject summons in the instant case sought information pertaining to two corporations in which either one or both of the Sawyers had an interest. Those two corporations are Ventaric Associated, Inc. and Inversiones Perico, S.A. It is not disputed that Respondent represents in his capacity as an attorney an undisclosed person, hereinafter referred to as ROE, who has some interest in the two above-named corporations, Ventaric Associated, Inc. and Inversiones Perico, S.A.

Pursuant to the instant Petition, this Court issued an Order to Show Cause on January 3, 1985, wherein Respondent was ordered to either appear before the IRS and comply with the subject summons or "file a written response to the petition, supported by appropriate affidavits as well as any motion the respondent desires to make." On January 15, 1985, Respondent filed his Response to Order to Show Cause and to Petition to Enforce Internal Revenue Service Summons and Request to Vacate Order to Show Cause and Dismiss Proceedings claiming that if he complied with the IRS summons, such compliance would force him to reveal the identity of his client, thereby violating the attorney-client privilege. An evidentiary hearing as to Respondent's claim of privilege was conducted on Monday, March 18, 1985, at which time the Court heard oral argument of counsel and received evidence in the nature of testimony and documentary exhibits. Thereafter, pursuant to the Court's directive, the parties filed supplemental memoranda on the applicability of the attorney-client privilege to the facts at bar. (Respondent's initial supplemental memorandum was filed on March 26, 1985. Petitioner's responsive supplemental memorandum was filed on April 17, 1985, and Respondent's reply memorandum was filed on May 1, 1985.) The Court has carefully considered the entire record of the cause including the various memoranda filed by both parties, the evidence and testimony presented at the March 18th hearing, the applicable law, and being otherwise fully advised in the premises, it is thereupon

ORDERED AND ADJUDGED that the Petition to Enforce Internal Revenue Service Summons be, and the same is, hereby GRANTED. Respondent's Request to Dismiss Proceedings is accordingly DENIED. For the reasons outlined below, Respondent MITCHELL ARONSON is hereby ORDERED AND DIRECTED to obey the summons issued to him in each and every requirement; to appear before Special Agent Frank M. Odom or any other proper official of the Internal Revenue Service at such time and place as may hereafter be fixed by Special Agent Odom or any other proper officer of the Internal Revenue Service; to produce for examination and copying the information, books, papers, files, records and other data described in the summons; and to give testimony as demanded in the summons.

█ The IRS has the power to issue summons like the one at bar pursuant to its enabling statute in the United States Code. Title 26, United States Code, Section 7602(a) provides in pertinent part:

For the purposes of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax of the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax or collecting any such liability, the Secretary is authorized—

(1) to examine any books, papers, records, or other data which may be relevant or material to such inquiry;

(2) to summon * * * any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, un-

der oath, as may be relevant or material to such inquiry; and

(3) to take such testimony of the person concerned under oath, as may be relevant or material to such inquiry.

Pursuant to this rather broad grant of authority, the IRS issued the subject summons to Respondent requesting certain documents. When Respondent appeared and failed to completely comply with the summons and produce the requested documents, the Government instituted the instant action. In actions to enforce such summons, like the one at bar, the Government's initial burden of proof entails fulfilling four distinct criteria. This four-pronged burden of proof has been articulated by the Supreme Court and adopted by the Eleventh Circuit in *Matter of Newton,* 718 F.2d 1015 (11th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1678, 80 L.Ed.2d 153 (1981) (*"Newton"*):

> The Supreme Court in *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964) defined the minimal showing that the IRS must make when seeking an order to enforce its summons. *Id.* at 57–58, 85 S.Ct. at 255. It must show that
>
> > the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to that purpose, that the information sought is not already within the Commission's possession, and that the administrative steps required by the Code have been followed.

718 F.2d at 1019. *Accord: United States v. Davis,* 636 F.2d 1028 (5th Cir.1981), *cert. denied,* 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981) (*"Davis"*). It is generally accepted that this burden can be met through the filing of an affidavit by the prosecuting IRS agent which attests to fulfillment of the four-pronged standard. *Newton, supra* at 1019. In the instant case, the four-part burden of proof has been fulfilled through the affidavits and testimony of the prosecuting IRS agent, Mr. Frank Odom, at the evidentiary hearing in this cause. The testimony and affidavits attest that the investigation is conducted pursuant to the legitimate purpose of assessing the tax liability of David and Delores Sawyer. The Government has also demonstrated that the instant summons may be relevant to this purpose because the information sought through issuance of the subject summons concerns the conveyance of two certain lots of land from David Sawyer to land trusts established on behalf of Inversiones Perico, S.A., the corporation which Respondent claims is owned in part by his client ROE. Furthermore, IRS Agent Odom testified that the information sought is not currently within the IRS' possession and finally, there is nothing in the record to indicate that the administrative steps required by the Code have not been followed.

▮ Clearly, the IRS has met its burden of establishing a prima facie case and indeed, Respondent does not dispute this. Once the government makes the minimal showing, the burden shifts to the taxpayer to disprove one of the elements of the government's case or to show that enforcement of the summons would be an abuse of the court's process. *Newton, supra* at 1019; *Davis, supra* at 1034. Rather than contest the government's establishment of a prima facie case, Respondent has accepted the challenge of meeting the shifting burden of proof through assertion of the attorney-client privilege.

▮ The broad summons power authorized under 26 U.S.C. § 7602 has been limited by the Supreme Court under circumstances where "traditional privileges and limitations" exist. A classic example of such a privilege is the attorney-client privilege which Respondent claims applies in the case *sub judice.* In *Upjohn Company v. United States,* 449 U.S. 383, 398, 101 S.Ct. 677, 687, 66 L.Ed.2d 584 (1981) (*"Upjohn"*), the Supreme Court held that the attorney-client privilege and the work product doctrine limited the scope of the IRS summons power.[1] The burden of proving the attorney-client privilege rests in the party asserting the privilege, however.

---

**1.** Respondent claims that pursuant to *Upjohn,* the two corporations in which ROE claims an

*United States v. Ponder,* 475 F.2d 37, 39 (5th Cir.1973). It must further be stressed that the attorney client privilege is limited to confidential communications between the lawyer and client made for the purposes of securing legal advice. *United States v. Melvin,* 650 F.2d 641 (5th Cir.1981); *United States v. McDonald,* 313 F.2d 832 (2d Cir.1963).

In the instant case, Respondent claims that the "privileged" information which would be revealed upon compliance with the IRS summons is the identity of his client. Respondent's client has asked Respondent to invoke the attorney-client privilege on the client's behalf so that his or her identity will not be disclosed in any event. Both the Eleventh and Fifth Circuit Courts of Appeals, following the lead of other circuits, have held that the identity of a client is not information which would normally fall within the scope of the attorney-client privilege. *In re Grand Jury Proceedings,* (Robert Twist, Sr.), 689 F.2d 1351 (11th Cir.1982) (*"Twist"*); *United States v. Ponder, supra; Frank v. Tomlinson,* 351 F.2d 384 (5th Cir.1965), *cert. denied,* 382 U.S. 1028, 86 S.Ct. 648, 15 L.Ed.2d 540 (1966).

There is an exception to this general rule of disallowing a client's identity to fall within the scope of the attorney-client privilege. That exception has been articulated in the Eleventh Circuit opinion of *Twist, supra,* wherein the Court stated:

> Ordinarily, the attorney-client privilege applies only to the content of communications made for the purpose of securing legal advice. The identity of a client or matters involving the receipt of fees from a client are not normally within the privilege. *United States v. Ponder,* 475 F.2d 37, 39 (5th Cir.1973). A narrow exception to this rule obtains when disclosure of a client's identity by his attorney would supply the last link in an existing chain of incriminating evidence likely to lead to the client's indictment.

689 F.2d at 1352–1353. The *Twist* Court determined that the facts before it did not embody the "last link" exception and held that the attorney-client privilege was *not* violated by requiring counsel to produce records of dates, places or times of meetings and communications with clients.

At the evidentiary hearing of March 18, 1985, Respondent's attorney represented to the Court that he had been informed that Respondent's undisclosed client ROE is currently the subject of a separate IRS investigation. Therefore, according to Respondent, disclosure of ROE's identity in the matter at bar would constitute "the last link in an existing chain of incriminating evidence." [2] (Respondent's initial supplemental memorandum, filed March 26, 1985, at p. 7.) Respondent has failed to carry his burden of proof on the applicability of the "last link" exception to the facts before the Court.[3] Only legal argument by Respondent's counsel has been offered in support of this "fact" of the IRS investigation directed toward ROE. No proof, in the form of affidavits or otherwise, have been submitted to the Court, which attest to the separate IRS investigation into ROE's af-

---

interest, Ventaric and Inversiones, can claim an attorney-client privilege as to confidential communications between corporate representatives and corporate counsel. The Government does not address this point in its memoranda. Quite clearly, *Upjohn* does authorize invocation of the attorney-client privilege in a corporate context. Still, the invocation of the attorney-client privilege by Ventaric and Inversiones does not affect the Court's ruling herein inasmuch as the requisite showings for invocation of the privilege have not been demonstrated by Respondent in any event, whether said privilege is claimed on behalf of the two corporations or ROE.

**2.** The applicability of the Fifth Amendment privilege against self-incrimination to the proceedings at bar was raised at the evidentiary hearing in this cause. In his post-hearing memorandum, Respondent disavows that he is claiming a Fifth Amendment privilege in response to the IRS summons. (Respondent's Reply to Petitioner's Memorandum, filed May 1, 1985, at pp. 1–2.) Accordingly, the Fifth Amendment issue is not now before the Court and therefore, is not addressed herein.

**3.** In fact, denial of the relief requested by Respondent is predicated upon the Court's belief that Respondent has utterly failed to carry his burden of proof with respect to all issues pertinent to the disposition of the instant petition.

fairs. Moreover, even if such proof had been offered, the fact of a separate IRS investigation is not enough to convince the Court that revelation of ROE's identity in the instant case would necessarily be the "last link in an existing chain of evidence likely to lead to the client's indictment." This is the test enunciated under *Twist* and it is a difficult test to meet. The testimony does not show and the Court therefore is not satisfied that disclosure of ROE's identity would subject him in any way to criminal repercussions, much less be the last link to the institution of criminal charges. Respondent has not fulfilled his burden of proof and the Court finds that the "last link" exception does not attach in the instant case. Accordingly, ROE's identity is not information which falls within the protective ambit of the attorney-client privilege.[4]

■ Respondent further asserts that the documents sought pursuant to the IRS summons represent privileged legal communications between Respondent, ROE and the two corporations. Although this assertion was not the primary focus of the evidentiary hearing on March 18th, it has been briefed extensively in the supplemental memoranda and bears consideration here. As noted previously, the burden of proving the existence of the attorney-client privilege rests on the party asserting the privilege. *United States v. Ponder, supra.* Respondent has not alleged any facts which supports his contention that the summons calls for the production of records protected by the attorney-client privilege. Basically, the summons requests documents regarding legal fees and the corporate records of Ventaric Associated, Inc.

and Inversiones Perico, S.A. The requests which Respondent focuses upon as embracing privileged material are Request Number 1 and Request Number 2. These requests encompass:

> All documents pertaining to purchases, leases, and/or sales of real and personal property to include contracts, memos, deposit receipts, lease and sub-lease agreements, closing statements, deeds, mortgages, liens, assignment satisfactions, subordinations and financial statements. All records of escrow and trust funds including deposits, disbursements, cancelled checks, deposit slips, ledger cards, cash receipts and transmittal correspondence.

These types of records have been held to constitute information outside of the attorney-client privilege. The Fifth Circuit so held in *United States v. Davis, supra* at 1044, stating:

> Many of the documents summoned from Orr similarly must relate to matters other than the giving of legal advice, and hence are outside the attorney-client privilege as well. Financial transactions between the attorney and client, including the compensation paid by or on behalf of the client, .... are not within the privilege except in special circumstances not present here. *United States v. Finley,* 5 Cir.1970, 434 F.2d 596, 597; *In re Grand Jury Proceedings (United States v. Jones ),* 5 Cir.1975, 517 F2d 666; *In re Walsh,* 7 Cir.1980, 623 F.2d 489, 494–495; *see also* 2 J. Weinstein's Evidence ¶ 503(a)(4) [02], at 503–32 n. 1 (1980). An attorney who acts as his client's business advisor or, his agent for receipt or disbursement of money or property to or

---

**4.** Respondent relies heavily upon the Third Circuit decision of *United States v. Liebman,* 742 F.2d 807 (3d Cir.1984). That case held that enforcement of an IRS summons would violate the attorney-client privilege based on an unusual set of circumstances. In that case, the IRS sought a list of clients who had been advised that they could deduct legal fees on income for certain years. The Third Circuit Court of Appeals reasoned that disclosure of these names would violate the attorney-client privilege because disclosure of the identities coupled with the fact that the IRS knew that these people all received legal advice regarding the deductibility of legal fees would provide all there was to know about the confidential communication between the clients and their attorneys. The case at bar consists of an inapposite set of facts. The IRS summons at bar does not specify the type of legal advice provided ROE, but rather seeks information about the corporate entities in which ROE possesses an interest. In the instant case, Respondent has not shown any "unusual circumstances" which would except the case from the general rule that disclosure of a client's identity is not within the attorney-client privilege.

from third parties ... is not acting in a legal capacity, and records of such transactions are not privileged. *Colton v. United States,* 2 Cir.1962, 306 F.2d 633, 638, *cert. denied,* 1963, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499; *Pollock v. United States,* 5 Cir.1953, 202 F.2d 281, 285–86, *cert. denied,* 1953, 345 U.S. 993, 73 S.Ct. 1133, 97 L.Ed. 1401.

Similarly, this Court considered and rejected an unsupported assertion of the attorney-client privilege in *The Matter of the Canadian Tax Liability of Mario Controneo, et. al.,* Case No. 83–764–Civ–SMA (S.D.Fla.1983). The privilege was asserted in that case in a petition to quash proceedings which was filed as a defense to the enforcement of an Internal Revenue Service summons. The IRS summons there sought testimony and records similar to the records sought in the instant case.

Respondent has testified that his services were engaged for the purposes of acquiring two lots of land from one or both of the Sawyers on behalf of Inversiones. He has further testified that he participated in the formation of the two corporations of Inversiones and Ventaric. In that capacity, Respondent established a land trust.

In *United States v. McDonald,* 313 F.2d 832 (2d Cir.1963), the appellant, an attorney, was served with an IRS summons requiring him to produce "copies of closing statements and sales contracts relative to all real estate closings in which William G. Lytle was involved that were closed through him or his office." 313 F.2d at 833. The appellant unsuccessfully asserted in the trial court proceedings that the documents were protected by the attorney-client privilege. On appeal, the Second Circuit held there was no merit to the claim of privilege because the client necessarily contemplated divulging the information requested to other parties at the closing.

Clearly, based on the nature of the functions that Respondent performed and the holdings in the above cited cases, the documents requested, to the extent they exist, are not protected by the attorney-client privilege. As to Request Number 1, encompassing purchases, leases, and other documents regarding the disposition of real and personal property, such documents fall squarely within the holding of *United States v. McDonald, supra,* in that they consist of matters which, by their very nature contemplate disclosure to third parties. With respect to Request Number 2, concerning records, receipts and other documents regarding trust and escrow accounts, such documents are embraced within the holding of *United States v. Davis, supra,* inasmuch as they memorialize record keeping and administrative tasks performed by Respondent. Moreover, Respondent has not demonstrated that these documents embrace or relate to confidential communications made to an attorney by a client for the purpose of rendering *legal* advice. Absent this showing by Respondent the attorney-client privilege cannot be invoked in order to avoid compliance with the instant IRS summons. Accordingly, pursuant to the above-cited authority, Respondent is ORDERED AND DIRECTED to comply with the subject IRS summons issued to him and produce the requested documents.