UNITED STATES of America and Peter P. Calarco, Special Agent, Internal Revenue Service, Petitioners-Appellees,

v.

Daniel MILLMAN, Esq., Respondent-Appellant.

No. 1299, Docket 85–6082.

United States Court of Appeals, Second Circuit.

Argued May 23, 1985.

Decided June 19, 1985.

Thomas A. Gick, Washington, D.C. (Michael L. Paup, Charles E. Brookhart, Tax Div., Dept. of Justice, Glenn L. Archer, Jr., Asst. Atty. Gen., Washington, D.C., Raymond J. Dearie, U.S. Atty., Eastern Dist. of New York, Brooklyn, N.Y., of counsel), for petitioners-appellees.

Lawrence S. Feld, New York City (Leonard R. Rosenblatt, Kostelanetz & Ritholz, New York City, of counsel), for respondent-appellant.

Before VAN GRAAFEILAND and PIERCE, Circuit Judges, and POLLACK, District Judge.*

* Honorable Milton Pollack, Senior District Judge, Southern District of New York, sitting by designation.

PER CURIAM:

Daniel Millman appeals from an order of the United States District Court for the Eastern District of New York (Weinstein, Chief Judge), dated April 4, 1985, which granted the government's petition to enforce an Internal Revenue Service (IRS) summons issued to appellant. On appeal, Millman contends: (1) that the IRS summons was issued for an improper purpose and that the district court erred in refusing to hold an evidentiary hearing on this issue; and (2) that enforcement of the summons violates his clients' attorney-client privilege.

### BACKGROUND

Appellant Millman is a tax lawyer in New York City. He contends that in or about 1968 he began advising some of his clients to invest annually in oil and gas wells in order to gain certain economic and tax benefits. In 1973, he retained the services of Boyd R. Brown, a Certified Petroleum Geologist and Certified Petroleum Engineer, to conduct a survey of the oil and gas properties in which he and his clients then had an interest. Through Brown, appellant and his clients sought to determine the fair market value of their investments in order to calculate the amount of charitable deduction they could claim on their individual income tax returns, since they planned to donate their interests in certain of the wells to charities.

After adopting Brown's estimate of the wells' fair market values on their 1973 federal income tax returns, several of appellant's clients were informed that their returns would be audited by the IRS; this occurred and certain findings were made. The clients appealed, and a hearing was conducted by the Appeals Office of the IRS. Attending the hearing were Meyer Baer, an IRS official of the Appeals Office, F. Caponegro, an IRS engineer agent, appellant Millman, as attorney for the taxpayers being audited, and Boyd R. Brown, the engineer who had been retained by the taxpayers. F. Caponegro, applying his own method of valuation, rejected the "an-alytical" method of appraisal employed by Brown and arrived at a fair market value for appellant's clients' investments which represented a small fraction of the fair market value as determined by Brown. Subsequently, in 1981, District Counsel of the IRS settled these cases under an agreement which provided that the value of the property contributed to the charities by Millman's clients for the years in issue would be 41% of the appraised value determined by Brown. According to Millman, these settlements represented an upward revision of Caponegro's appraised values by more than 300%.

Eventually, the IRS initiated an audit of appellant's own 1979 federal income tax return. IRS examiner Stanley Tepper, in conducting the audit, requested from appellant documents relating to the ownership and operation of one of the subject wells. Appellant provided these documents. When the examiner also demanded documents relating to the production and income of the well, appellant told him that the IRS already had those documents, since the well at issue had been the subject of previous audits of appellant's clients' tax returns. According to appellant, Tepper told him that the IRS still wanted to see the document again. Viewing this request as harassment, Millman refused.

On July 25, 1983, Special Agent Calarco of the Criminal Investigation Division of the IRS issued and served a summons on Millman requiring him to testify and produce documents relating to "the ownership, operation and distribution of earnings" of two oil and gas partnerships in which appellant was a partner. Millman refused to comply with the summons, and in November, 1984, the United States and Calarco filed a petition to enforce the summons in the United States District Court for the Eastern District of New York, pursuant to Sections 7604(a) and 7602(b) of Title 26 of the United States Code. Accompanying the petition was a declaration of Calarco stating that he was conducting an investigation into the tax liability of appellant for the taxable years 1979 through 1981; that

the records being summoned were not already in the possession of the IRS; that the records were necessary to the investigation; that all administrative steps required by the Internal Revenue Code for the issuance of the summons had been complied with; and that no recommendation to prosecute appellant had been made to the Department of Justice.

Appellant filed a motion to dismiss the petition or, in the alternative, for an evidentiary hearing, claiming: (1) that the summons was issued for an improper purpose; (2) that the summons seeks production of information already in the IRS' possession; (3) that enforcement of the summons would violate the attorney-client privilege of appellant's clients; and (4) that enforcement of the summons would violate appellant's fifth amendment privilege against self-incrimination. Appellant maintains that the summons represents an abuse of the IRS' investigative powers. Specifically, appellant contends that under the guise of conducting an investigation of his federal income tax liability, the IRS has issued the summons as part of an effort to punish him for his zealous and successful legal representation of certain of his clients before the IRS in connection with audits of their federal income tax returns, which audits include examinations of the very same oil and gas wells at issue herein.

Finding that appellant had failed to make a substantial preliminary showing of abuse, and stating that, in its opinion, an evidentiary hearing would be "fruitless" since the IRS witnesses would simply deny that the criminal investigation was designed to harass and punish appellant, the district court found that Millman was not entitled to an evidentiary hearing. In addition, the district court held that the attorney-client privilege did not protect from disclosure the identities of appellant's clients. The District Court therefore ordered Millman to comply with the summons by appearing before Agent Calarco and producing the documents described in the summons, with the exception of those documents which it was agreed were already in IRS' possession.

■ The Supreme Court has held that "a court may not permit its process to be abused" by enforcement of an IRS summons that "ha[s] been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *United States v. Powell*, 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964). Where a taxpayer has made "a substantial preliminary showing" of such abuse, he is entitled to an opportunity to substantiate his allegations by way of an evidentiary hearing. *United States v. Tiffany Fine Arts, Inc.*, 718 F.2d 7, 14 (2d Cir.1983), *aff'd*, —— U.S. ——, 105 S.Ct. 725, 83 L.Ed.2d 678 (1985) (quoting *United States v. Morgan Guaranty Trust Co.*, 572 F.2d 36, 39 n. 9 (2d Cir.1978)). At such hearing, he may "examine under oath the agents responsible for the investigation and any other witnesses he may call." *United States v. Kis*, 658 F.2d 526, 540 (7th Cir.1981), *cert. denied*, 455 U.S. 1018, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982).

■ Although mere conclusory allegations of wrongdoing unsupported by any evidence from which a court might draw an inference of abuse are insufficient to rebut the government's prima facie showing of a proper investigatory purpose, the taxpayer has met his burden if he alleges specific facts "from which a court might *infer a possibility* of some wrongful conduct by the Government." *Id.* at 540 (emphasis in original). Similarly, in *United States v. Church of Scientology of California*, 520 F.2d 818 (9th Cir.1975), the court stated that "because ... [the] ... summonee bears the burden of proving bad faith harassment or other abuse, we think that the summonee must be afforded at least *some* opportunity to substantiate its allegations." *Id.* at 824 (emphasis in original). *United States v. Hamilton Federal Savings & Loan Assoc.*, 566 F.Supp. 755 (E.D.N.Y.1983), in which an evidentiary

hearing was denied, is not in conflict with this proposition. There, the court found that the taxpayers had "not submitted *any* evidence in support of their conclusory allegations of conspiracy." *Id.* at 761 (emphasis added).

In our view, in seeking an evidentiary hearing, appellant herein did not rely upon conclusory allegations of IRS abuse. Rather, appellant submitted to the court documentation which permitted an inference of improper purpose. For example, the record establishes that: (1) IRS Engineer Agent Caponegro was in large part responsible for referring this matter from the IRS Examination Division to the IRS Criminal Investigation Division—after an in camera review of the IRS report referring appellant's case for a fraud investigation by the Criminal Investigation Division, the district court found that "[t]he documents furnished indicate, as the taxpayer suspected, that IRS Engineer Frank Caponegro had a large role in suggesting a fraud referral; (2) during argument before the district court, government counsel conceded that Caponegro was hostile toward Brown; (3) Tepper, the IRS examiner who originally audited appellant's 1979 return, is an agent who assisted Calarco in his criminal investigation; (4) an affidavit submitted by one of Millman's clients suggests that, in an interview the client had with Calarco in 1983 as part of this investigation, Calarco himself might have a bias against Millman; and (5) although the alleged fraud by Millman in connection with his tax returns concerns appellant's valuation of a well which was also at issue in the IRS' investigation of some of Millman's clients, it does not appear that any of the clients' cases were ever referred for criminal investigation, or were even the subject of a civil fraud penalty.

Based on the above, we conclude that the district court abused its discretion in finding that a sufficient substantial preliminary showing had not been made to require an evidentiary hearing as to whether the IRS summons was issued for an improper purpose. We wish to make clear that, under no circumstances, should our determination with regard to an evidentiary hearing be construed as addressing the contention that the attorney-client privilege is a bar to the IRS obtaining disclosure of the names of the co-participants or other evidence relating to the subject venture.

We therefore reverse and remand for proceedings consistent with this opinion.