ANTHONY P. OLIVE, Director of Virgin Islands Bureau of Internal Revenue, Plaintiff

v.

ISHERWOOD, HUNTER & DIEHM, Defendants

Civil No. 1987/40

District Court of the Virgin Islands

Div. of St. Croix

March 31, 1987

JOANNE E. BOZZUTO, ESQ., Office of the Attorney General (Department of Law), St. Thomas, V.I., *for petitioner*

RICHARD H. HUNTER, ESQ., St. Croix, V.I., *for respondent*

O'BRIEN, *Judge*

## MEMORANDUM OPINION and ORDER

This petition asks us to enforce a tax summons for documents involving a lawyer's escrow account. We find that these documents are not privileged and that the law firm has failed to make a substantial showing that the Government ordered production in bad faith. The summons will, therefore, be enforced.

## I. FACTS

On November 25, 1986, the Virgin Islands Bureau of Internal Revenue ("B.I.R.") served a summons upon the law firm of Isherwood, Hunter & Diehm[1] for

> All books, records and documents pertaining to the escrow account of Isherwood, Hunter, & Diehm (Formerly Isherwood, Barnard & Diehm) and all books, records and documents pertaining to escrow account controlled by any partner individually for the years 1982 and 1983.[2]

Respondents James H. Isherwood and Richard H. Hunter were the sole members of the partnership during those years.

The firm notified the B.I.R. that the attorney-client privilege prevented its compliance and the B.I.R. responded by filing this petition for enforcement. Oral argument was waived by the parties.

The law firm has conceded that it must surrender escrow checks reflecting income to the partners as well as checks "not involving clients." It argues that the summons must be quashed with respect to the remaining documents because those are both privileged and irrelevant to the audit.

## II. DISCUSSION

■ The Internal Revenue Service, and thus the B.I.R.,[3] may summon a taxpayer's financial records "for the purpose of

---

[1] The firm presently operates under the name Isherwood, Hunter & Colianni.

[2] The firm waived all objections to the manner and sufficiency of service.

[3] Pursuant to 48 U.S.C. § 1397 (Supp. 1986), the Virgin Islands is a separate taxing authority whose authority mirrors that of the United States Treasury Department. Danbury, Inc. v. Olive, 627 F. Supp. 513, 515 (D.V.I. 1986) (citations omitted). Hence, precedent interpreting the scope of the I.R.S.'s power applies with equal force to the B.I.R.

ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax . . . or collecting any liability . . . ." 26 U.S.C. § 7602(a)(1). This statute's broad mandate reflects "a congressional policy choice *in favor of disclosure* of all information relevant to a legitimate I.R.S. inquiry." United States v. Arthur Young & Co., 465 U.S. 805, 816 (1984). The investigatory power is expansive, id., and summonses are entitled to "an exceptional amount of deference." United States v. Fox, 721 F.2d 32, 40 n.6 (2d Cir. 1983). See generally United States v. Biscelgia, 420 U.S. 141, 145–46 (1975).

██ A challenged tax summons should be enforced where the B.I.R. makes a prima facie showing that the summons issued before criminal prosecution relating to the summons' subject matter was recommended and that the summons power is being used in good faith pursuit of the purposes of § 7602. United States v. LaSalle National Bank, 437 U.S. 298, 318 (1978). Good faith requires a showing that the investigation was conducted pursuant to a legitimate purpose, that the information sought may be relevant to that purpose, that the information was not already within the taxing authority's possession and that the applicable administrative procedures were followed. United States v. Powell, 379 U.S. 48, 58 (1964). See also United States v. Cortese, 614 F.2d 914, 919 (3d Cir. 1980).

██ The burden then shifts to the taxpayer to either disprove an element or show that enforcement would constitute an abuse of the court's process. Powell, supra at 58; United States v. Millman, 765 F.2d 27, 29 (2d Cir. 1985).[4] This burden is a heavy one: the taxpayer is entitled to an evidentiary hearing only after making "'a substan ;ial preliminary showing'" that an abuse has occurred. E.g., id.

The firm challenges this summons under two theories. First, it is contended that the documents sought are protected by the attorney-client privilege. Alternatively, the firm alleges that the summons issued in bad faith because the documents demanded are irrelevant to the audit. We will address the claims seriatim.

---

[4] The Powell Court explained that "[s]uch an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." 379 U.S. at 58.

## A. *The Attorney-Client Privilege*

■■ The summons power is not absolute and is limited by the traditional privileges, including the attorney-client privilege. Upjohn Company v. United States, 449 U.S. 383, 398 (1981); Reisman v. Caplin, 375 U.S. 440, 449 (1964). See United States v. Amerada Hess Corp., 619 F.2d 980 (3d Cir. 1980). Whether material is privileged is a matter of federal law and is governed by Fed. R. Evid. 501. E.g., United States v. Liebman, 742 F.2d 807, 809 (3d Cir. 1984). The essential elements of the privilege are:

(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to the fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding and not (d) for the purpose of committing a crime or tort and (4) the privilege has been (a) claimed and (b) not waived by the client.

United States v. United Shoe Machinery, 89 F. Supp. 357, 358–59 (D. Mass. 1950). See also 8 Wigmore on Evidence § 2292 (1961).

■ The financial aspects of the attorney-client relationship are generally not privileged because fees and awards seldom involve the pursuit of legal counseling. Thus, the privilege excludes a lawyer's record of fees collected from a specific client. United States v. Davis, 636 F.2d 1028, 1044 (5th Cir. 1981) (citations omitted), cert. denied, 454 U.S. 862 (1982); United States v. Sherman, 627 F.2d 189, 192 (9th Cir. 1980); United States v. Hodgson, 492 F.2d 1175, 1177 (10th Cir. 1974); United States v. Ponder, 475 F.2d 37, 39 (5th Cir. 1973); United States v. Hartigan, 402 F. Supp. 776, 777 (D. Minn. 1975); United States v. Long, 328 F. Supp. 233, 236 (E.D. Mo. 1971).

■■ In response to a tax summons, therefore, a lawyer must reveal both the nature of and remuneration for legal services. Colton v. United States, 306 F.2d 633, 637–38 (2d Cir. 1962), cert. denied, 372 U.S. 951 (1963); Long, supra at 236. Moreover, the privilege does not immunize the contingency fee contract and statement of distribution from a tax summons. United States v. Cortese, 540 F.2d 640, 642 (3d Cir. 1976).

■ The courts are in accord that the fact that money passes through an attorney's escrow account does not privilege an otherwise unprivileged transaction. Factually, the most similar case is United States v. Tratner, 511 F.2d 248 (7th Cir. 1975). Tratner, a lawyer, invoked the attorney-client privilege when asked to identify the payee of a $10,000 check drawn on his escrow account. The Seventh Circuit held that no per se privilege attached to the account and, therefore, Tratner was required to demonstrate that either the account or the transaction was privileged or else comply with the summons. Id. at 252.

In United States v. Dickinson, 308 F. Supp. 900 (D. Ariz. 1969) aff'd 421 F.2d 702 (9th Cir. 1970), an attorney whose accounts receivable records were summoned to determine his individual tax liability attempted to invoke the privilege on the theory that production would expose the identities of his clients. The court rejected this argument on the authority of the well-established rule that absent a "compelling reason to protect the identity of the client . . . , the identity of the client is not a communication protected by the privilege." Id. at 901.[5]

■ Nor can the attorney or client claim the privilege to prevent the bank holding the escrow account from producing its records. Gannet v. First National Bank of New Jersey, 546 F.2d 1072, 1076 (3d Cir. 1976), cert. denied, 431 U.S. 954 (1977) (no privilege attached to bank records of escrow account through which lawyer laundered a client's cashier check to facilitate anonymous transaction to the I.R.S.); United States v. Bank of California, 424 F. Supp. 220 (N.D. Cal. 1976) (to determine lawyer's tax liability, I.R.S. obtained escrow records from bank following lawyer's invocation of privilege).

■ Finally, the Third Circuit has unequivocally stated that local laws requiring lawyers to establish escrow accounts add nothing to the federal common law privilege. Cortese, supra; Gannet supra.

---

[5] The Third Circuit recognizes an exception to this rule where the identity of the client will expose the substance of the legal advice received. Leibman, supra. The Eleventh Circuit holds that identity is immune from a tax summons when it would supply the last link in an existing chain of incriminating evidence likely to lead to the client's indictment. United States v. Aronson, 610 F. Supp. 217, 221 (S.D. Fla. 1985) aff'd 781 F.2d 1580 (1986) quoting In re Grand Jury Proceedings, 689 F.2d 1351, 1352–53 (11th Cir. 1982).

■ The sole grounds advanced in support of the claim of privilege is the firm's bald statement that the documents are entitled to protection merely because they pertain to the escrow account. A finding in favor of the firm would require us to rule that escrow records are privileged per se, a result that is contrary to the established rule. E.g., Tratner, supra at 252; Gannet, supra at 1076. We hold, therefore, that if privilege is to attach to any of the approximately 1,600 escrow transactions, the firm must prove each one individually, E.g., United States v. Lawless, 709 F.2d 485, 487 (7th Cir. 1983); Davis, supra at 1044 n.20.[6]

B. *Relevancy*

Next, the law firm argues that the only escrow records needed for the audit are those reflecting income to the partners or the partnership's expenses. The remaining documents dealing solely with transactions for clients were purportedly summoned as part of "a fishing expedition involving other persons" and are, therefore, irrelevant. Hence, it is contended that that part of the summons issued in bad faith and is unenforceable.

■ For purposes of a tax summons, relevancy is not judged under the standard of Fed. R. Evid. 401 for admitting evidence at trial. Arthur Young, supra at 814. The test in this circuit is whether the documents sought might throw light on the correctness of the return. United States v. Egenberg, 443 F.2d 512, 515 (3d Cir. 1971) quoting United States v. Harrington, 388 F.2d 520, 524 (2d Cir. 1968). See Arthur Anderson, supra at 813–14 n.11 (citing and acknowledging Egenberg as the majority rule). And while the B.I.R. has the burden to demonstrate relevancy, the affidavit of the investigating agent makes the requisite prima facie showing. La Mura v. United States, 765 F.2d 974, 979 (11th Cir. 1985); United States v. Garden State National Bank, 607 F.2d 61, 68 (3d Cir. 1979); Cortese, 614 F.2d at 919 n.7 citing United States v. McCarthy, 514 F.2d 368 (3d Cir. 1975); United States v. Carter Family Trust, 602 F. Supp. 82, 84 (N.D. Ind. 1985).

This minimal showing is particularly appropriate where, as here, the summons is directed at the target of the investigation. United

---

[6] Success appears unlikely, however, because of the nature of the documents sought by the B.I.R. "[C]hecks are not confidential communications but negotiable instruments to be used in commercial transactions." United States v. Miller, 425 U.S. 435, 442 (1976). Thus, an essential element of the attorney-client privilege is negated. Moreover, the firm's internal bookkeeping records cannot soberly be called a communication in furtherance of legal advice.

States v. Freedom Church, 613 F.2d 316, 321 (1st Cir. 1979) (citation omitted).

 In support of the summons, the agent, Ana L. D. Ramirez, affirmed that "[i]t is necessary to examine the books, papers, records or other data sought in order to properly investigate the federal tax liability of Isherwood, Hunter & Diehm for the years of 1982 and 1983." In this circuit, such a recitation satisfies Powell's relevancy requirement. McCarthy, supra at 373. Hence, the burden shifted to the firm to make a substantial showing of bad faith. E.g., Powell, supra at 58; Millman, supra at 29.

The firm, however, declined to submit a shred of evidence and its naked accusations of irrelevancy do not rebut the B.I.R.'s prima facie case. E.g., Carter Family Trust, supra at 85. Nor was any attempt made to shore up its claim that the summons is merely a vehicle for a "fishing expedition."

Section 7602 inclusively defines the purposes for which a summons may issue. "The Government is not entitled to go on a fishing expedition." United States v. Dauphin Deposit Trust Co., 385 F.2d 129, 131 (3d Cir. 1967), cert. denied, 390 U.S. 921 (1968). It does not have "unrestricted license to rummage through the office files of [a law firm] in the hope of perchance discovering liabilities for some as yet unidentified client." United States v. Theodore, 479 F.2d 749, 754 (4th Cir. 1973). However, production of a client list may be compelled for the purpose of discovering tax irregularities in the clients' returns. Id.; United States v. Carter, 489 F.2d 413, 414-15 (5th Cir. 1973); United States v. Turner, 480 F.2d 272, 279 (7th Cir. 1973). Even assuming that the summons is targeted for unknown third parties, the firm has utterly failed to show that the former rule and not the latter applies. Absent some proof, the summons must be enforced.

## III. CONCLUSION

In accordance with the foregoing, the summons in the above-captioned matter will be enforced.

## ORDER

THIS MATTER is before the Court on the petition of the Virgin Islands Bureau of Internal Revenue to enforce a tax summons against the respondent law firm. Having filed a memorandum opinion of even date herewith, and the premises considered, now therefore it is

ORDERED:

THAT the petition to enforce the tax summons be, and the same is hereby GRANTED.